**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | § | |
| **VS.** | § | **CRIMINAL NO. 4:06-cr-421**<br>**CIVIL NO. 4:13-cv-604** |
| **ADNAN MIRZA** | § | |

**Amended Objections to Memorandum and Recommendation Denying Movant's § 2255 Motion to Vacate, Set Aside or Correct Sentence**

Adnan Mirza files these Amended Objections to the findings and recommendations of Magistrate Judge Francis H. Stacy as follows:

I. Section III of the Magistrate's Recommendation, Factual Background and Evidence

In Section III of the Magistrate's Recommendation, Magistrate Stacy sets forth statements from the Fifth Circuit's opinion affirming Mirza's convictions. Mirza objects to Court relying upon the Fifth Circuit opinion when determining findings in a 2255 proceeding. The facts should be determined based upon the entire record including the affidavits submitted by the Petitioner in support of his 2255. The allegations of the 2255 are that the lawyer did not investigate the facts which therefore were not effectively presented to the jury and consequently need to be reassessed for veracity at this stage of the proceedings.

A. In the first full paragraph on page 5 of the Magistrate's Recommendation, Adnan Mirza objects to the following finding: "Based on this interview, the FBI opened an

investigation targeting Mirza and Williams." In the same paragraph, Mirza objects to a finding that "According to McKinley, the goal of this investigation was to 'determine Mr. Mirza's and Mr. Williams' intent based on the information [the FBI] received and then try to substantiate those allegations." These findings suggests that Mirza was a target of this investigation prior to the government hiring Coates to be a paid informant. Mirza objects to these findings. Mirza was not a target of this investigation prior to the government hiring Coates to be an informant. Mirza was not camping with Coates or firing guns with Coates until after Coates was stopped by border patrol for shooting guns with Kobie Williams which is when Coates became a confidential informant. Affidavit of Adnan Mirza, Document 1-8 at 5. Trial counsel was ineffective in failing to secure and offer evidence of the date Coates was hired as a confidential informant and the date that Mirza became a target of the investigation.

B. In the second full paragraph on page 5 of the Magistrate's recommendations, Adnan Mirza objects to findings that "Mohammad then became part of a 'jamaat,' or group, that included Mirza, Williams, and Coates. According to Mahammad, the intent of the group was to 'go through Pakistan to eventually get into Afghanistan and/or Iraq.' At trial, Mohammad also testified that the group was 'trying to go and hook up with essentially, anybody fighting against the Americans, but that entailed the Mujahadeen, the taliban, al-Qaeda.'" The intent of the group was to serve the community in any way possible including feeding the homeless, educating the public about the Islamic religion, and providing cultural training to the Houston police department. Affidavit of Adnan Mirza, Document 1-8; Affidavit of Hany Massoud, Document 1-2; Affidavit of Shiraz Qazi, Document 1-3; Affidavit of Fatimah

Bhutan, Document 1-5; Affidavit of Hanif Ismail, Document 1-6. Like many Texans, the group did go camping and shoot guns for fun. Some members of the group mentioned the possibility of defending people in other countries. Mirza attempted to steer those members of the group away from harm.

C. In the third full paragraph on page 5 of the Magistrate's recommendations, Adnan Mirza objects to the entire paragraph which suggests that the group was intended to train for military action oversees. Any discussions of fighting oversees were initiated and led by the government agent who entrapped the boys to cause them to appear to take steps to participate in military action oversees. Transcripts of some of the conversations are attached as exhibits to these objections. Mirza, never intended to participate in any military action. Affidavit of Adnan Mirza.

D. In the fourth full paragraph on page 5 of the Magistrate's recommendations, Adnan Mirza objects to the entire paragraph which states that the group intended to raise money for people who were fighting and specifically that Mirza collected money and gave it to another person to deliver for the purpose of supporting Mujahadeen fighters. The group wanted to raise money to support the victims of war that is the families. Mirza collected some money from the group, but Mirza intended for the money to support needy families in the United States. Mirza gave the money to an ICNA representative specifically for this purpose. Affidavit of Adnan Mirza, Document 1-8.

E. Adnan Mirza objects to findings that the information contained in the first and second paragraph of page 6 is true. This information is quoted from the Fifth Circuit opinion and derives from testimony in trial that was not contested by trial counsel in relation

to statements allegedly made to federal agents. The alleged statements to law enforcement were not recorded, not written by Mr. Mirza nor reduced to writing and sworn to by Mr. Mirza. Mirza provided contrary testimony in his writ and specifically objects to any finding that this information is true as opposed to the information found in his writ. Mirza was not employed and therefore not in violation of his student visa. Affidavit of Adnan Mirza, Document 1-8 as well as supporting affidavits.

**II. Section IV of the Magistrate Judge's Recommendation, Discussion – Ineffective Assistance of Counsel Claims**

A. Trial Counsel

1. Failure to Consult

Adnan Mirza objects to the recommended finding that trial counsel consulted with Mirza consistently. Document 32 at 10. Adnan Mirza objects to the recommended finding that it is clear from the trial record that trial counsel consulted with Mirza consistently and made reasonable strategic decisions based on those consultations. *Id.* The record includes affidavits attached to the 2255 from numerous witnesses about whom trial counsel was informed and who were readily available to testify at trial. It is clear from a review of these affidavits that the issues about which these witnesses would have testified are stronger than the issues presented at trial. [1] Adler's trial strategy was merely to cross examine the government witnesses and to present a few folks to say that Mirza is a nice guy. Clearly testimony that Mirza was innocent of the charges lodged against him is stronger that

[1] Counsel certainly has some leeway in making strategic decisions but as noted in the Magistrate's findings and recommendation when the ignored issues are clearly stronger than those presented by the trial lawyer, the presumption of effective assistance of counsel is overcome. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)(c9ted with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000))

testimony that he is a nice guy and stronger than merely cross examining the government witnesses.

Adnan Mirza objects to the recommended finding that the statement in Adler's affidavit that he met with Mirza 37 occasions spending more than 25 hours discussing the facts and the law of the case is true. *Id*. The Court claims that Mirza has not specifically denied Adler's allegations that he met with Mirza 37 times spending more than 25 hours discussing the facts and the law of the case. *Id*. Mirza has specifically denied this particular allegation in Document 21 at 1, ¶ 6. [2]Mirza again here specifically denies the allegations in ¶ 6 of Adler's affidavit that he visited with Mirza 37 times and met with Mirza more than 25 hours. In addition, Mirza alleges that Adler's consultations were not effective, because they did not address the facts of the case or any defenses derived therefrom. The Court should direct a hearing in order to inquire into the details of the attorney client conferences and evaluate the credibility of both participants in the conferences. A hearing will allow the Court to hear the testimony of Mirza and Adler on the content of the conversations making it easier to judge their individual credibility. A hearing will also give the Petitioner the authority to subpoena the custodians of records at the Joe Corley Detention Center and the Federal Detention Center in Houston to bring the attorney logs so that the Court can see exactly how many time Adler met with Mirza and how many other clients Adler met with during the same visits to the facilities. In Mr. Mirza's affidavit on page 6, Mr. Mirza states that David Adler:

[2] Mirza requested copies of attorney visitation logs from both the Joe Corley Detention Center and the Federal Detention Center in Houston in order to provide additional proof on this issue. Both facilities are working on the requests, but the logs are not electronic; therefore, producing this information takes a great number of man hours.

> never reviewed the facts of my case with me. He visited me about 10 times prior to trial. On the first occasion, he met with me for about 45 minutes. Mr. Adler said that he was there just for an introduction and not to talk about the case, so we did not talk about the case, so we did not talk about the case. The second time Mr. Adler went over the sentencing guidelines. I told him that I was not guilty, and did not need to go over the sentencing guidelines, but he still spent two hours going through the guidelines for each charge. I attempted to talk to him about the facts of the case and my side of what happened, but he refused to talk about his. He only wanted to talk about the sentencing guidelines. The remainder of the meetings would normally last only f to 20 minutes. Mr. Adler would be meeting with several of his clients on the same visit to the prison. When he met with me, he only gave me updates on the case such as that there was a superseding indictment or when the next court date was scheduled. Several times he asked me to plead guilty. When my indictment was superseded, he would review the new sentencing guidelines with me as well. On each occasion, I would attempt to tell him my side of the story. He would interrupt me and tell me that he had not finished review the documents and that when he had finished reviewing the documents, he would ask questions. This date never came. David Adler never reviewed the allegations with me in detail. He never discussed any defenses with me, and he never heard my side of the story. Document 1-8 at 6-7.

Adnan Mirza objects to the finding that the Trial Judge expressly commented at the conclusion of the trial on the excellent representation Mirza had been provided. *Id.* The Court's comments at trial were based solely upon what was presented in trial. The Court had no knowledge of the information contained in the affidavits attached to the 2255; therefore, the comments should not be taken as support for a determination of the effectiveness of counsel at this stage of the proceedings in light of the production of Mirza's defensive evidence.

2. Uncalled Witnesses

Mirza concurs with the Magistrate Judge's recitation of the law. "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Mirza has made this showing with each of his affidavits. Informed tactical choices are not objectively unreasonable. *United States v. Cockrell*, 720 F. 2d 1423, 1427-28 (5th Cir. 1983). Adler's tactical choices were not "informed," because Adler had not consulted with his client about defenses, nor investigated the defenses.

a. Mirza's Employment

With respect to Ayub Badat, Mirza concurs that he has not provided an affidavit from Ayub Badat. At the time of the writ investigation, counsel would submit as an officer of the Court that Ayub Badat was in very ill health due to a heart condition. Ayub Badat's testimony would be cumulative to the testimony of other witnesses; therefore, counsel determined that it was unnecessary to continue to seek an affidavit from a very ill witness.

With respect to Hanif Badat, it was clerical error that resulted in the delay in filing Hanif Badat's affidavit. The affidavit was not intentionally filed after the government's response. The affidavit is dated and notarized March 6, 2013. March 6, 2013, was the deadline for filing the 2255 motion. Counsel filed the motion on March 5, 2013, the day prior to deadline. When Hanif Badat's affidavit arrived still in time to be filed on the deadline, counsel intended for it to be filed that day. The failure to file the affidavit was

purely clerical. Counsel seeks leave of Court to have the affidavit of Hanif Badat considered despite the late filing due the fact that it is clear that the affidavit was prepared timely, and it would be unjust for the client's meritorious claim to be denied due to a clerical error in counsel's office.

Adnan Mirza objects to the Magistrate Judge's recommended finding that "With respect to the affidavits that have been submitted – from Ibrahim Badat, Shiraz Qazi, Hanif Ismail, and Hanif Badat – either the contents of these alleged witnesses' affidavits would have been inadmissible, or issues with respect to the alleged witnesses' credibility would have led a reasonable defense attorney, such as Adler, to decide, as a matter of reasoned trial strategy, against offering these witnesses' proposed testimony at trial." Document 32 at 13. The testimony of these witness would have been admissible and there is no foundation for Adler's allegation that the witnesses lacked credibility.

Mirza concurs with the Magistrate Judge's summary of the witness affidavits related to the fact that he was not working in violation of his student visa. Mirza objects to the Magistrate Judge's recommendation that Adler's affidavit describing his purported conversation with attorney Chris Flood provides grounds for not contacting any witnesses regarding Mirza's employment.

The Court states that that Mirza has not directly or specifically contested the contents of Adler's affidavit as to his investigation. Document 32 at 14-15. Mirza has denied the paragraph of Adler's affidavit referencing the investigation, and hereby specifically denies it again. In Adnan Mirza's Pleading Admitting and Denying Statements in Affidavit of David Adler, Mr. Mirza states in paragraph 12: "Mr. Mirza denies the statements in paragraph 12

with the following exception: Mr. Mirza admits that Mr. Adler did talk to him about the 'case' in that he repeatedly reviewed the charges and advised Mr. Mirza to plead guilty. Mr. Mirza's claim is that Mr. Adler refused to talk with him about the facts supporting his defense." Document 21 at 2, ¶ 12. The Court's recommendation refers to the relevant paragraph in Adler's affidavit as paragraph 13. Document 32 at 14, bottom of the page. It is actually paragraph 12. Mirza denied paragraph 12 as described. Mirza admitted portions of paragraph 13, the portions that refer to what Adler advised. This confusion may have led to the Court's perception that Mirza has not denied the paragraph describing Adler's investigation.

In addition, Mirza specifically disputes Adler's representation that he attempted to interview one witness, each of Mirza's witnesses states in their affidavits that they were not contacted by the defense. Witness Hany Massoud states that he was not contacted by the defense and he knows Hanif and Ibrahim Badat and that they are very honest and would not mislead anyone about Adnan. Document 1-2 at 2. The fact that all of these witnesses state that Adler did not contact them certainly weighs against Adler's credibility that he did investigate. Just like the government often says in cross-examination of defendants, "so all of these people are lieing about you?" There is absolutely no valid basis for the assertion that any of these witnesses have credibility issues. These witnesses were upstanding members of the community at the time of this conviction. They remain upstanding members of the community. With the exception of Shiraz Qazi who was a co-defendant, none of these witnesses have been charged with a crime. It is appalling for Mr. Adler to sweepingly malign the character of each and every one of affiants by telling the Court they are under

investigation with the only foundation for that statement the purported speculation by attorney Chris Flood. In addition, Hanif Ismail was lumped into this speculation even though he is not a member of the Badat family. Adler decides that Hanif Ismail is a potentially a criminal since Hanif Ismail may have helped Mirza in purchasing weapons and providing money to people in need in the United States. Mirza's conduct in purchasing a weapon is only a crime if the government is correct that he is out of status; therefore, it is absurd to suggest that Hanif Ismail could commit a crime by helping a student purchase a gun or give money away to the poor. Hanif Ismail was in the best position to provide evidence that Mirza had not committed a crime. Mirza has denied the statements by Adler regarding his investigation and continues to deny them. The Court should conduct a hearing to judge the credibility of Mr. Adler as compared to credibility of all of these witnesses who swear that they were not contacted.

Mirza objects to the Magistrate Judge's finding that "there is no dispute, and no controverting evidence from Mirza, as to Adler's communications with Chris Flood about Ibrahim Badat's unwillingness to testify on Mirza's behalf." Ibrahim Badat's affidavit controverts the allegation that he refused to testify previously. As an officer of the Court, counsel would add that counsel contacted attorney Chris Flood to seek affidavits from the witnesses, and Mr. Flood advised that counsel was welcome to speak to the witnesses and secure the relevant affidavits. Mr. Flood did not say anything at all derogatory about the Badats or about Mirza to counsel.

Furthermore, if Adler is correct that one witness would not speak to him, this should not have stopped him from attempting to interviewing other witnesses and if Adler did not

want to talk to any more members of the Badat family, he could have sought other witnesses who could have provided the same testimony such as employees of the company where Mirza was performing his volunteer service. If Mr. Adler was unsure of the identity of other witnesses who could provide the testimony to be proffered by Ibrahim Badat, he should have informed his client of the problem and secured the names of other witnesses, or he could have subpoenaed records from the Texas Workforce Commission to provide the evidence that Mirza was not employed.

Mirza objects to the Magistrate Judge's recommendation that "Adler's decision not to pursue Ibrahim Badat, Ismail Hanif, Shiraz Qazi, or Hanif Badat as defense witnesses was the product of anything other than reasoned trial strategy." Adler's decision not to investigate Mirza's defenses was not an informed tactical decision. Mirza objects to the Magistrate Judges recommendation that "That trial strategy, which was to create reasonable doubt through the cross-examination of the Government's own witnesses as to Mirza's employment status, was reasonable given the ongoing investigation of Mirza's activities, and the possible involvement of the Badat family, Shiraz Qazi, and Hanif Ismail Hanif in the offenses charged against Mirza." It is not a reasonable trial strategy to rely solely on cross-examination of witnesses of the federal government when defense witnesses and documents are available to contravene the government's case. Federal agents are experienced in testifying and with-standing defense cross examination, making it unreasonable for a defense attorney to choose to present defenses merely through cross-examination. Again, there is absolutely no valid foundation for Adler's determination that the remainder of the witnesses lacked credibility.

Mirza objects to the Magistrate Judge's recommendation that Mirza cannot use his affidavit to support his claim of ineffective assistance of counsel. The case law on this issue generally arises from petitioners contesting the voluntariness of guilty pleas. The case law states that unsupported after-the-fact statements contradicting the petitioner's statements on the trial record are given less weight than the record. *Taiwo v. United States*, not reported in F.Supp. 2d 2007 WL 3001782 (S.D. Tex. 2007). Mirza did not make any statements in trial, and Mirza's affidavit is supported by other affidavits, so the case precedent does not even apply to Mirza's statement. The Court should be able to give his statement whatever weight the Court feels is appropriate in reviewing all of the evidence. In addition, the case precedent is not saying that the petitioner's statement should not be considered at all, just that it should be given less weight than something he said on the record previously.

Mirza objects to the Magistrate Judge's finding that "with respect to Mirza's claim that counsel should have obtained records from the Texas Workforce Commission to show that he was not 'employed', Mirza has made no showing that such records would have furthered his defense." The affidavits of witnesses who are prepared to testify that Mirza was not employed are evidence that the Texas Workforce Commission would show that he was not employed. If Adler did not want to call these witnesses, then he should have used the government records that could prove the same thing as the witnesses that is that Mirza was not employed. Mirza objects to the Magistrate Judge's finding that Adler's decision to cross-examine the Government witness's in lieu of obtaining records was reasonable. Cross-examination of experienced government witnesses is not a reasonable trial strategy when

defense witnesses and documents are available to directly contravene the testimony of the government witnesses.

b. Financial Support for the Taliban

In support of his writ, Mirza offers into evidence the incredibly critical testimony of the person to whom Mirza handed the money collected from his peers in support of humanitarian causes, Hanif Ismail. Document 1-6. This affidavit gives Mirza's direct statement of his intent for the use of the money that he was handing to Hanif Ismail. Mirza objects to the Magistrate Judge's finding that the content of Ismail's affidavit would not be admissible based on Ismail's failure to establish personal knowledge of the facts contained therein." Ismail's affidavit establishes that he received the money from Mirza and that Mirza told him the intended use of the money. Ismail's affidavit also establishes Ismail's additional knowledge of Mirza's intent in his service work in general which is also some evidence of his intent with regard to the funds subject of the indictment. Perhaps, this additional information caused some confusion. Clearly, Mirza's direct statements of intent are admissible to prove his intent.

Mirza objects to the Magistrate Judge's findings that where the money actually went is not crucial to the defense. Where the money actually went is crucial in several ways. First, the conversation that occurs when the money is handed to the next person in the chain of charity is relevant to show the giver's intent, and second where the money actually went is some proof of Mirza's intent in collecting the money and as an alternative where the money actually went is evidence of abandonment of any crime. Generally, money raised for charity arrives where the giver intends for it to arrive. The money arrives at the charity, because the

giver hands it to someone in the transport industry and expresses his/her intent saying something like, "please deliver this money to the Homes of Grace." A jury is entitled to follow such logic, and therefore, the evidence of the logical process is relevant and admissible.

Mirza objects to the Magistrate Judge's recommended finding that "upon this record, where there is no admissible defense evidence as to Mirza's lack of intent, counsel's performance was reasonably effective." As described in the previous paragraphs, Hanif Ismail's affidavit provides evidence of lack of intent.

c. Entrapment

Mirza objects to the Magistrate Judge's recommended finding that "the affidavit evidence pointed to and relied upon by Mirza would not have supported an entrapment defense." Testimony of witnesses that the government's confidential informant was the instigator of all fun and games with guns is certainly evidence that the government induced the boys to play with guns.

Mirza objects to the Magistrate Judge's recommended finding that "Moreover, an entrapment defense was generally inconsistent with Mirza's denials of the offense and the evidence admitted at trial that he was an enthusiastic participant." Mirza recognizes the Court's concern in regard to defense of entrapment and his position that he is not guilty and has contemplated this concern since his arrest. Mirza's position is that the government's conduct in setting up the fun and games with guns created the impression that the boys were preparing for war and therefore committing a crime. The government entrapped the boys into participating in the conduct that caused this impression. Mirza would state that the

evidence at trial showed that he was a willing participant in camping trips and that after much pressure from the confidential informant did finally willing shoot guns. There was absolutely no evidence that he was an enthusiastic participant in criminal activity. A full listening of the tapes shows boys engaged in being boys – camping outside, fishing, talking about girls and shooting guns. There is mirth and laughter and arguments about when one should get married. A full listening of the tapes shows Mirza to be an enthusiastic participant in these wonderful activities of boys who are in the tail end of their adolescence. The tapes do not at all show an enthusiastic criminal as is contemplated by the Magistrate Judge's proposed finding.

Mirza objects to the Magistrate Judge's finding that testimony and evidence at trial was that Mirza collected the financial donations and arranged for them to be sent to families of the Taliban including testimony by government agents. Mirza objects to the Magistrate Judge's finding that he intended to support the Taliban militarily. Mirza remains opposed to violence including violence by the Taliban. Document 1-8 at 8.

Mirza objects to the Magistrate Judge's recommended findings regarding defense counsel's failure to review the tape recorded evidence with him. Mirza reviewed the tapes prior to trial and provided a list to Adler "of the parts of the tapes he needed to play in order to give the jury the accurate picture of what was said in full context of the conversation, and so the jury could hear my general tone of levity on the camping trips and sarcasm in conversations." Mirza filed a motion to be returned to Houston to review the tapes with writ counsel and provide the evidence the Magistrate Judge notes was not provided yet to the Court. This motion was denied. Mirza renews this motion at this time. In an effort to

attempt to provide this evidence, a zip drive of transcripts of the 100s of hours of conversations was sent to Mirza. Mirza has identified 100s of pages of the conversation which are relevant to these issues. The transcripts identified by Mirza have been printed and attached to these objections as an exhibit. In order to be truly effective, these conversations need to be reviewed by counsel and client in one space slowly and meticulously going to each tape for evidence on each contested issue and then packaged in an organized manner for the Court. The transcripts show the government's agent and confidential informant are the ones pressuring the others to participate in the shooting activities.

Mirza objects to the Magistrate Judge's recommended finding that "Because the evidence in the record and the newly affidavits of Massod, Qazi and Bhutan are insufficient to support an entrapment defense, Mirza cannot show that counsel's performance vis-à-vis an entrapment defense was deficient." Mirza's affidavit along with the affidavits of Massod, Qazi and Bhutan as well as the reams of transcripts provide evidence of the entrapment.

d. Character Witnesses

Mirza objects to the Magistrate Judge's recommended finding that defense counsel through witnesses Sam Kouka, Masood Akhtar, and Arafat Siddiqui offered evidence of Mirza's peaceful character. These witnesses were not effective because they did not know Mirza well enough to provide a knowledgeable opinion and because they were not effectively prepared to testify. For these same reasons, Mirza objects to the Magistrate Judge's recommended finding that additional character evidence would have been cumulative. The additional witnesses actually knew Mirza well enough to be knowledgeable and could have effectively testified to his peacefulness.

Mirza objects to the Magistrate Judge's recommended finding that many of the character witnesses were under investigation. This finding is based on the rank speculation by Adler, which Adler attributes to attorney Flood regarding a couple of witnesses and then Adler's decision to lump all of the witnesses together alleging they are under investigation. Only one of the witnesses, Shiraz Qazi would have been subject to cross examination about any criminal conduct. Qazi served a couple of years for possessing a weapon out of status. He has now returned to the community is married, employed and the father of four children. He did not then and does not now think they did anything wrong. He will now and would have then testified accordingly. If Adler had interviewed him, he would have been able to evaluate his potential testimony and make "informed" strategic decisions. Counsel would affirm that Qazi is an incredibly convincing witness. The remainder of the witnesses have never been in trouble in their lives. No evidence, other than rank speculation by Adler which he attributes to attorney Chris Flood, has been produced by the government or Adler that any of the other witnesses ever faced criminal charges or have any negative information that would limit their credibility in any way. Again, if Adler had interviewed any of these witnesses, he could have made "informed" strategic decisions.

e. Credibility of James Coates

Mirza objects to the Magistrate Judge's recommended findings that "With Coates not testifying, there was no need for counsel to investigate Coates' credibility for possible impeachment purposes. In addition, there is nothing in the record to suggest the Government withheld exculpatory or material information from the defense regarding Coates, nothing in the record to indicate that Coates was a Government informant prior to

the investigation involving Mirza, and nothing in the record to indicate or suggest that Coates had testified in any other trials." When the government announces that it is not calling to testify, the very person who started the investigation, the person who was present for every event that the government claims is a crime, this person should be the first person called by the defense. At the very least, Adler should have interviewed Coates while he was in town and available.[3] The government witnesses admit Coates is an informant. The government witnesses just mysteriously could not remember the date he started in this position. In evidence is Mirza's affidavit in which Mirza states his first lawyers reviewed the evidence contained in the 302's which state that Coates became an informant in September/October 2004. This date was before Mirza's first camping trip. The date is critical, because the date shows that there is no evidence of propensity to commit a crime prior to the date that Coates became an informant. The government failed to present evidence in trial about the exact date, and continues to fail to present evidence of the exact date in response to the writ. In the interests of justice, Mirza moves for the Court to order the government to produce the 302's which show the date that Coates became an informant as well as Coates entire informant file specifically including the notes from each of his interviews by agents.

Mirza objects to the Magistrate Judge's recommended finding that the contents of Bhutan's affidavit did not provide counsel with any basis to call into question the credibility of Coates. Juries will find that payments of large sums of money to government informants

---

[3] Coates has disappeared from Houston. Counsel has tracked him across the country and out of the country but has been unable to catch up with him for an interview.

impacts the informant's credibility. Mirza objects to the Magistrate Judge's recommended finding that Mirza has offered no evidence to contradict McKinley's testimony. Mirza objects to the Magistrate Judge's recommended finding that Mirza has not pointed to anything else counsel could have learned about Coates that would have furthered the defense and as such has not shown that counsel's performance was deficient in this regard. Counsel could have learned the amount of money Coates was paid and the date he became a confidential informant. The date that Coates becomes an informant is critical to the entrapment defense, because it is the date prior to which the government must show the existence of propensity evidence. McKinley was not the agent when Coates became a confidential informant and claimed he did not know the date that Coates became an informant. [4]

f. Credibility of Agent Mohammad

Mirza objects to the Magistrate Judge's recommended finding that counsel's performance in regard to Mohammad was deficient. Mirza objects to the Magistrate Judge's recommended finding that Mohammad's general personnel files, nor transcripts of his testimony in other cases were discoverable. Mirza objects to the Magistrate Judge's recommended finding that He has failed to show what else counsel could have done or what other information would have been pertinent to his credibility. Mirza objects to the Magistrate Judge's recommended finding that Mirza has failed to show that counsel's investigation was deficient.

[4] An agent testifying as a lead agent should be aware of the entire file, and therefore, Agent McKinley should know the date his confidential informant became a confidential informant.

g. Kobie Williams

Mirza objects to all of the Magistrate Judge's recommended findings regarding Kobie Williams.

3. Exclusion of Hunting License

Mirza objects to the Magistrate Judge's recommended findings that "Mirza does not suggest how defense counsel could have defeated the Government's motion in limini on the issue, or how counsel's more effective performance would have likely resulted in a different outcome at trial. Nor does Mirza identify the recording to which he refers, the content of such recordings, or explain their use in the context of a witness' testimony." Document 32 at 26. The government argued and Adler apparently believed that there was no evidence that Mirza intended to hunt and therefore the hunting license was not relevant. As the Magistrate points out in the recommended findings, the trial Court stated that he would admit the hunting license if there was any other kind of evidence to suggest anything about hunting. Document 32 at 26. The Court recognized that an intent to hunt would be relevant to the defenses. In support of his position, Adler points to conversations after government agents had entrapped the boys into participating in military type games. These were conversation that the government offered into evidence at trial. The trial record and the writ record reveals that the only evidence Adler reviewed was the evidence the government intended to offer into evidence. It is incumbent upon defense attorneys to review all of the evidence. The truth is that there was ample evidence of Mirza's intent to hunt. If Adler had listened to the tapes, he would know that Mirza and Coates did discuss hunting. All of the conversations in which Coates is persuading Mirza to go camping reference hunting.

Transcripts of many of these conversations are attached as exhibits to these objections. These conversations and the subsequent hunting license are critical to show Mirza's intent in going on the camping trips was to learn to hunt. These facts are critical to the evaluation of propensity to commit a crime. Coates entrapped Mirza to go camping in order to hunt and then brought in a government agent to further entrap Mirza into appearing to be engaged in military training.

Mirza objects to the Magistrate Judge's recommended findings that Mirza has not shown that he was prejudiced as a result of counsel's performance regarding the hunting license. Mirza objects to the Magistrate Judge's recommended findings that Mirza has failed to show that counsel's performance in this regard was not within the broad range of reasonable professional assistance. Document 32 at 27.

4. Cross Examination of Agent McKinley

Mirza objects to the Magistrate Judge's recommended findings that Mirza fails to show that entrapment was a viable defense and consequently cross-examination, or lack thereof, on that point had no impact on the outcome of the case. Mirza objects to the Magistrate Judge's recommended finding that Adler's affidavit that he found no evidence that Mirza was induced to commit a crime is an accurate reflection of the evidence. Adler never found such evidence because he failed to review the tapes identified by Mirza as containing that evidence. Mirza objects to the Magistrate Judge's recommended findings that he has failed to controvert Adler's statements in this regard. Mirza has controverted this statement with his affidavit and the affidavits of his witnesses. In addition, transcripts of

some portions of the tapes showing Coates persuading Mirza to go camping and tapes showing Mirza and the government agent leading shooting games are attached as exhibits.

Mirza objects to the Magistrate Judge's recommended findings that Mirza does not explain what counsel should have done differently or what testimony should have been elicited from Agent McKinley about Coates. Counsel should have obtained the date that Coates became an informant and full records of all payments in terms of amounts and dates paid to Coates. This is certainly discoverable information. When the agent did not know the answers, Adler should have asked him to return with notes and answers to questions the following day. If he refused to do so voluntarily, Adler could issue a subpoena for him to return with the case file so that he could answer questions that should be in the knowledge of the case agent. In fact, all notes and reports should have been turned over to Adler for use during cross-examination. If none of this information was in the notes, Adler should have raised the issue with the government and if that failed with the Court for production of this critical information to which he was entitled.

5. Preparation of Defense Character Witnesses

Mirza objects to the Magistrate Judge's recommended finding that defense counsel had a greater concern that witnesses would refuse to testify if they saw the pictures of Mirza shooting guns. This is by no means a greater concern. If the witnesses are going to be influenced by pictures of Mirza holding guns, then they are not favorable witnesses for a defendant accused of gun offenses. In reality, photos of someone shooting guns in Texas are only going to be disconcerting if they are presented in the type of light that the government presents them in cross examination. Almost every person living in Texas has fired a gun in

the past. My mother has her sharp shooter award and likes to remind people of this fact and my nanny's 11 year old daughter just received her first gun as a gift from her father. Adler could have presented the charges and the pictures in their true light as evidence of Mirza's efforts to hunt and play with guns. Mirza objects to the Magistrate Judge's recommended finding that "Mirza has not shown how that the testimony of the defense's character witnesses would have been more favorable had defense counsel provided them with specifics about the charges and evidence." Document 32 at 29. Mirza objects to the Magistrate Judge's recommended findings that "there is nothing in the record to support this ineffectiveness claim." Document 32 at 29. Because the defense witnesses were not made aware of the charges prior to trial, when they were made aware of the charges by the prosecutor, their positive opinions waivered. The impact is to leave the impression on the jury that Mirza is a Dr. Jekyll and Mr. Hyde personality, that his outward personality was a charitable college student seen by these folks while his private personality was that of a terrorist. If defense counsel had interviewed the witnesses prior to trial himself and informed them of the charges, then he could have made "informed" decisions about whether to call them as witnesses. Every defense attorney should know that the first question the prosecutor will ask is if the witness knows the charges and the second is if now knowing the charges changes their opinion. If defense counsel has found witnesses who know the defendant well enough to render substantiated opinions, then their opinions will not waiver because they will know that the defendant has been shooting guns with his friends and they will know about the charges.

6. Jury Instruction

Mirza objects to the Magistrate Judge's recommended findings regarding his jury instruction claim.

7. Closing Argument Objection

Mirza objects to the Magistrate Judge's recommended findings that Adler's decision not to object to closing argument that was not supported by the trial record was not deficient. Mirza objects to the recommended finding that he does not dispute this reason. Mirza does dispute that this is a good reason not to object. Stating that the evidence proved that Mirza intended to support the Taliban was highly inflammatory. It is not a reasonable choose not to object. There is no question that the jury heard the prosecutor's statement. It is just the kind of statement that can cause a juror to think he or she remembered the testimony incorrectly. If Adler had objected, it would have given him a chance to highlight the prosecutor's error.

8. Rebuttal Remark Objections

Mirza objects to the Magistrate Judge's recommended findings regarding his Rebuttal Remark Objection claim.

B. Appellate Counsel Claims

Mirza objects to the Magistrate Judge's recommended findings regarding his Appellate Counsel Claims.

Therefore, Adnan Mirza objects to the Magistrate Judge's Findings and Recommendations as set forth in the Magistrate Jude's Memorandum and Recommendation Denying Movant's §2255 Motion to Vacate, Set Aside or Correct Sentence.

Respectfully submitted,

Adnan Mirza

/s/ Daphne Pattison Silverman
By: Daphne Pattison Silverman
The Silverman Law Group
501 North IH-35
Austin, Texas 78702
(512)485-3003

## CERTIFICATE OF SERVICE

I, Daphne Pattison Silverman, do hereby certify that on this the 19th day of September 2014, a true and correct copy of this Pleading was served on all parties of record via electronic filing.

/s/ Daphne Pattison Silverman
Daphne Pattison Silverman
Attorney for Movant, Adnan Mirza